BENTON, Judge, concurring.
I concur in sections I and III of the majority opinion. I concur in the result reached in section II but write separately because I disagree with the majority’s analysis.
PRESERVATION OF THE APPEAL
The majority concludes that Hodges failed to raise before the trial judge his arguments regarding the denial of his Motion to Compel Discovery. I disagree. First, the majority argues that Hodges failed to argue that the Commonwealth did not comply with the trial judge’s original discovery order. However, the written motion filed by Hodges states the following, in pertinent part:
COMES NOW [Hodges], by counsel, and represents to the Court that the Commonwealth has refused to produce discovery in accordance with the previously entered discovery order in these cases, to wit: records of proficiency testing pursuant to paragraph 2(w) of said order.
Paragraph 2(w) of the April 1994 discovery order required the Commonwealth to provide Hodges “copies of records of proficiency testing of personnel in the laboratories where RFLP and PCR analyses were performed in these cases.” The Commonwealth’s argument that the disclosure met the requirements of the parties’ subsequent agreement does not negate the fact that Hodges raised in his motion the Common *57 wealth’s failure to comply with the April discovery order. Accordingly, I would hold that Hodges preserved his objection that the Commonwealth failed to comply with the discovery order.
The majority next concludes that Hodges failed to argue before the trial judge that the anonymity of the laboratories in the CTS report prevented him from determining the laboratory’s overall proficiency and rate of error. I disagree. At the hearing on Hodges’ Motion to Compel Discovery, the following discussion occurred:
COUNSEL: ... Our discovery is incomplete in one small detail. There have been some references to forensic proficiency testing which has been performed or has been based upon tests submitted to the Virginia laboratory with the results turned in to an evaluating agency, and we received the results; however, these tests are sent out to many laboratories and the results are returned to the evaluating agency.
Now, upon evaluating the tests, they publish these in a book form like this, but all the laboratories are coded so that you can’t tell who it is without having the laboratory number. So our request is to have the laboratory number so that we can more properly discuss these materials.
THE COURT: ... Why do you need to know that? COUNSEL: Well, in this particular case, we’re not concerned with all of the other 39 or 40 laboratories around the country who may have reported in. We’re concerned with the Virginia laboratory. So in that connection, we are seeking ... the identification ... which sets of these results correspond to the laboratory we’re interested in discussing here to see if they did do well on the test or if they didn’t do well on the test or any questions like that.
Counsel did state during the argument that he “would be satisfied if the laboratory could identify which test corresponds with this analyst.” However, later in the discussion counsel resumed his argument that he needed the laboratory’s *58 identification code. Counsel clearly made the trial judge aware of the relief he sought and the grounds in support of his assertion. See Code § 8.01-384(A) (“[I]t shall be sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take ... and his grounds therefor____”). Accordingly, I would hold that Hodges also preserved this argument for appeal.
MERITS
However, the record reveals that Hodges signed an agreement with the Commonwealth that purported to govern the manner in which the Commonwealth would satisfy its discovery burden as provided in the prior discovery order. The agreement, entitled “Agreement on DNA and Serology Discovery,” stated, in pertinent part, the following:
It is hereby agreed that discovery related to DNA and serological analyses will be provided in the manner described in the paragraphs that follow.
6. A memorandum recounting the proficiency testing of Mr. Scanlon and the results thereof will be provided by the laboratory.
The memorandum the Commonwealth later provided to Hodges described the nature of each of four tests performed. Specifically, the report set forth the manufacturer of each test, the nature of the blood samples used, and the kinds of analyses completed on the samples. The report stated that no deficiencies were found in three of the tests. The results from the fourth test had not been received. Because the memorandum appears to “recount[ ] the proficiency testing ... and the results thereof,” I would hold that the Commonwealth satisfied its burden under the agreement and the order to which it pertained. Accordingly, I concur.